Lawrence E. Henke
Addam D. Pincock
Vicevich Law
3738 Harrison Ave.
Butte, MT   59701
Telephone: (406) 782-1111
Fax No.: (406) 782-4000
addam@vicevichlaw.com
larry@vicevichlaw.com
State Bar of MT No. 42337024/66156315

Attorneys for Plaintiff

## IN THE MONTANA THIRD JUDICIAL DISTRICT COURT
## STATE OF MONTANA, IN AND FOR THE COUNTY OF GRANITE

| | | |
|---|---|---|
| BRENDA RHOTEN, | ) | Cause No. DV-21-08 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **COMPLAINT AND** |
| vs. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| ROCKING J. RANCH, LLC dba | ) | |
| THE RANCH AT ROCK CREEK | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW the Plaintiff, BRENDA RHOTEN, by and through her counsel of record,

Addam D. Pincock and Lawrence E. Henke, and for her Complaint against Defendant,

ROCKING J. RANCH, LLC dba THE RANCH AT ROCK CREEK, asserts and alleges as

follows:

### I.
### Parties

1. Plaintiff, Brenda Rhoten, was a resident of Granite County at all times pertinent hereto.

2.  Defendant Rocking J. Ranch, LLC dba The Ranch at Rock Creek ("The Ranch"), is a limited
    liability company registered with the State of Montana with its principal place of business at
    79 Carriage House Lane, Philipsburg, MT 59858.

## II.
### Venue and Jurisdiction

3.  Venue is proper in District Court of Granite County pursuant to M.C.A Title 25, Chapter 2,
    §§ 25-2-122(1)(a) and 25-2-122 (2)(a).

4.  This Court has personal jurisdiction over the parties to this lawsuit because Defendant is
    incorporated as a business in the State of Montana and their principal place of business is in
    Granite County, Montana.

## III.
### Summary of Lawsuit

5.  This case is another unfortunate example of a massage therapist being subjugated by her
    employer and forced, as a condition of continued employment, to essentially become a sex
    worker and require them to succumb to the wealthy and well-off who pay for the resort stays,
    using them as places of sexual pleasure.

6.  The Ranch has allowed some of its more affluent clients to solicit sexual favors from their
    massage staff and encouraged such conduct through, among other things, refusing to permit
    the professional massage methodology, refusing to investigate and correct harassing behavior
    from clients, and refusing to provide a safe work environment through directions to the
    therapist to remain in the room when propositioned by a client for sexual favors.

7.  Ms. Rhoten on numerous occasions had male clients make subtle requests and sexually
    motivated advances for her to perform sexual favors while performing her duties as a massage
    therapist.

Exhibit B - 2

8. These instances were reported to her immediate supervisor and other employees whose responsibilities or stature would help make these requests stop.

9. These reported issues were ignored by her immediate supervisor and shrugged off as non-existent.

10. Her requests to alter her massage treatment methodologies to comport with her training and experience in reducing the propensity for sexual advances were rejected by the Ranch.

11. Her requests to be able to leave a room when propositioned by a client were rejected by the Ranch.

12. Her employer required her to remain in the room with a client who propositions her unless the level of sexual advancement and harassment reached a level of physical injury or risk of physical harm.

13. The employer's refusal to investigate, remediate, and eliminate the sexual harassment from clients further aggravated Ms. Rhoten's PTSD disability, which causes, among other things, severe migraines.

14. Ms. Rhoten suffers from PTSD, which is a recognized disability under the Americans with Disabilities Act; the Ranch was informed of this disability.

15. Ms. Rhoten asked for reasonable accommodations from the Ranch; the Ranch refused them.

16. The ongoing sexual harassment, the employer's tolerance of the sexual harassment, the employer's direction to NOT use professionally trained methods to reduce sexual propositions from clients, and the employer's refusal to provide reasonable accommodations further deteriorated the work environment to the point that no reasonable massage therapist would endure the working conditions.

17. Ms. Rhoten suffered emotional distress, loss of income, and physical manifestation of harm as a result of the Ranch's actions, conduct, and refusal to engage in reasonable employer practices.

## IV.
## Background Facts

18. Ms. Rhoten is a professionally trained massage therapist. She did her schooling at the Center for Massage and Natural Health in Asheville, North Carolina and finished the top in her class.

19. Ms. Rhoten is an experienced massage therapist. She started working as a massage therapist at the Carnegie Hotel in Johnson city, Tennessee, which is a AAA Four Diamond Hotel and Spa. She then worked at Brush Creek Ranch in Saratoga, Wyoming, which is a Forbes Five Star Resort. She then was self-employed before starting work at The Ranch at Rock Creek.

20. As an experienced, professionally trained massage therapist, Ms. Rhoten's role as a massage therapist included, among other things, professional treatment in the realm of a healthcare worker would be viewed – she provides a professional service designed and intended to improve the physical and mental health of the client.

21. As an experienced and professionally trained massage therapist, Ms. Rhoten is aware of the reality that "massage therapists" can be viewed by the general public as a disguised sex worker.

22. The general public impression that massage therapists can be viewed as sex workers is so prevalent and pervasive in the industry that part of her education and training dealt with de-escalation or avoidance techniques.

23. Specifically, the education and training addressed therapeutic treatments to avoid or therapeutic methodologies designed to reduce the possibility of sexual proposition, the most prevalent of which included male customers propositioning female therapists.

Exhibit B - 4

24. The most predominant methodology avoidance suggestion was  performing male massages starting face up, ending the massage with the client face down.

25. Ms. Rhoten's education and professional experience also included therapeutic methodologies designed for her safety, including but not limited to:

    a.  Starting massages face up;

    b.  Not remaining in a room after a sexual proposition;

    c.  Reporting all client propositions to the employer;

    d.  Knowing that individuals generally will not explicitly ask for sexual favors but will be subtle in their requests.

26. Ms. Rhoten was recruited as a professional massage therapist to relocate from Tennessee to Montana by the Ranch.

27. Ms. Rhoten began working for The Ranch in June of 2019 as a massage therapist.

28. Ms. Rhoten's direct supervisor was Brooke Bucher; the Ranch manager was Jon Martin.

29. During her second week, in June 2019, she was working in the Ranch Spa as a massage therapist when a male customer who the Ranch scheduled for her requested a "deep tissue massage."

30. Ms. Rhoten asked the customer, who was lying face down, to flip over to start the massage. This technique would ensure that the massage ended with the male customer face down, not face up and body up exposing his genitals at the end.

31. The client seemed upset with this request and further complained to her supervisor, Brooke Bucher.

32. Ms. Rhoten responded to the complaint to Ms. Bucher that the reason for this unfavorable remark by the male customer was that the male customer was expecting something more than just a "deep tissue massage" during the session.

33. These concerns were conveyed to her immediate superior, Brooke Bucher, who dismissed the concerns by simply stating "are you sure that's what he meant?".

34. The employer's brushing off of this situation demonstrated a disregard for the safety of the employee, a willful disregard of sexual harassment activity in the workplace, and a tacit approval of the customer propositioning sexual favors.

35. On June 30, 2019, Ms. Rhoten was working in the Ranch Spa, as a massage therapist, conducting a full body massage on a male client as requested by the customer when booking the appointment.

36. The male client asked Ms. Rhoten if she could "rub me all over."

37. Ms. Rhoten believed that the male client was asking for something more than a normal full body massage and instead was asking for a sexual favor.[1]

38. She responded that she could not "rub him all over."

39. Ms. Rhoten brought this obvious sexual proposition by the client to her immediate supervisor, Brooke Bucher.

40. The Supervisor, Brooke Bucher, did not investigate the matter and appeared more intent on disputing the validity of the sexual proposition, rather than protecting the employee from unwanted sexual advances.

---

[1] The term "sexual favor" in this context refers the performance, by the massage therapist, of stimulation to the penis of the male client and colloquially referred to as "a happy ending".

41. The Supervisor, Brooke Bucher, interrogated Ms. Rhoten, asking if she was sure that is what the male client was referring to and Ms. Rhoten, as an experienced and well-trained massage therapist, and a woman, responded it was obvious.

42. Ms. Rhoten was very shaken and upset that she was not being taken seriously by her supervisor and was afraid that these sexual favors were considered part and parcel for the job by her new employer, the Ranch.

43. Ms. Rhoten expressed to her supervisor that, based on her training and experience in the industry, the professional response to sexual propositions is for the massage therapist to leave the room to diffuse the situation.

44. Upon informing her immediate supervisor that this was Ms. Rhoten's intent to leave the room to diffuse the situation if such conduct occurred again, she was told by the supervisor that this would be unprofessional and that's not the way they did things at the Ranch.

45. Ms. Rhoten felt unsafe performing the professional massage therapy services as directed by the supervisor, and she felt that the supervisor was creating an unsafe work environment by placing the service restrictions on her that were contrary to her education, training, and experience.

46. Ms. Rhoten made a formal complaint to Ranch Manager, Jon Martin, and HR Director, Catherine Johnson, regarding the actions of Ms. Rhoten's immediate supervisor.

47. During the meeting where her complaint was made, Jon Martin made a comment to Ms. Rhoten that, while dropping clients off at the airport, the clients were making jokes about getting the "special massage" while at The Ranch. This reinforced Ms. Rhoten's fear that the employer tacitly approved of, and through inaction promoted, the performance of sexual favors for

clients as a part of the services of the Ranch, and thereby an employment expectation of the Ranch massage therapists.

48. The remarks, and acknowledgment by Ranch Manager Jon Martin that he was aware of the remarks, demonstrated the employer's knowledge of unsafe working conditions, sexual harassment of its employees by clients, and the perpetuation of this conduct by Ranch management acceptance of all such actions against and by its employees.

49. In August 2019, Ms. Rhoten was assigned a male client by the Ranch, for massage services in the Ranch Spa, who was married.  The male client, during her services, asked her personal questions about her relationship status.

50. While she attempted to benignly deflect the inappropriate questions, the male, married client continued to probe, more aggressively and intimately, asking personal questions of her during the session.

51. The male client's aggression and increasingly more intimate probing of personal status was so severe that Ms. Rhoten ended the session five (5) minutes early.

52. Ms. Rhoten immediately brought this conduct by the male client to her immediate supervisor, Brooke Bucher.

53. The Supervisor did not respond with any type of protective measure, no indication that she would investigate, or any training or counseling on ways to divert such sexual advances. Instead, the Supervisor told Ms. Rhoten that it was not appropriate for her to end a session early, regardless of the situation created by the client.

54. Rather than initiate an investigation of the male client's inappropriate behavior, the Supervisor instead interrogated Ms. Rhoten on how she knew the male client was flirting with her, which completely ignored the reported personal inquiries of a female employee by a male customer,

in a setting where the male is naked, under towels, and the employee is a massage therapist required to engage in personal touching of the client.

55. Ms. Rhoten detailed the male client's inquiries about her personal status, her experience and training background provided the Supervisor with unequivocal substantiation of the situation, its inappropriate nature, and the unquestioned need for investigation.

56. After these incidents, Ms. Rhoten began using the trained technique from her schooling, which alters the methodology of the therapeutic care by starting the clients face up and finishing them face down, to lessen the chance that male clients will propose the performance of sexual favors at the end of the session.

57. This technique, however, was strongly opposed by The Ranch. Her supervisor, Brooke Bucher, told Ms. Rhoten that this was not an accepted practice in the massage therapy field, and she was precluded from using it at the Ranch.

58. Later, in August 2019, Ms. Rhoten's supervisor engaged in retaliatory and harassing behavior in the workplace directed against Ms. Rhoten. The Supervisor reported publicly and in the open work environment with other employees present, that she experienced an incident involving a client, who was an older man, and described him as having made advances on her in the Spa's massage room and exposing himself to her.

59. The Supervisor's commentary about this incident was purposefully overexaggerated; she made much of the allegation description in a purposeful and obvious sarcastic tone and tenor; and the implied message was that Ms. Rhoten was being overly sensitive in bringing the past incidents to the Supervisor's attention.

60. The purposeful mocking of Ms. Rhoten's claims, intentionally making them seem insignificant in an over-the-top display in front of other employees was a retaliatory action meant to chill

future reporting of sexual harassment by Ms. Rhoten and as a warning to the other employees that they too would be mocked if they attempted to report such sexual propositions by customers.

61. The Supervisor, Brooke Bucher, continued and accelerated the retaliation against Ms. Rhoten by scheduling her more erratically, calling her in on her days off, and making the performance of her job more difficult.

62. Ms. Rhoten was promised when interviewing for the job that it was a full-time, yearly, position with the possibility of a closure in January for repairs and seasonal work.

63. However, since that time, Ms. Rhoten has discovered that the job as promised by the Ranch was not the actual job she was being asked to perform after relocating from Tennessee.

64. The Ranch breached its promise of a full-time, yearly, position with the possibility of a closure in January for repairs, instead making her position a seasonal full-time position.

65. Ms. Rhoten, upon hire and as part of her disclosure to the Ranch, made her supervisor aware of her PTSD disability.  In discussions with Bucher, Ms. Rhoten made it clear that staying on a consistent, predictable schedule was a necessary accommodation for her disability, and that the consistent schedule was required to mitigate the physical impact of her disability, generally manifested by debilitating migraines.

66. Ms. Rhoten's supervisor Brooke, Catherine Johnson, Justin Robbins, and Jon Martin, despite being informed of her disability, have individually, and collectively as the Employer, denied the reasonable accommodation to keep Ms. Rhoten on a more consistent schedule.

67. Ms. Rhoten subsequently prepared a proposal for the Ranch to consider providing her additional schooling in the massage therapist field, which could then be utilized by The Ranch in her performance of her duties.

68. This proposal was approved by The Ranch management.

69. On October 12, 2019 Ms. Rhoten's supervisor, Brooke Bucher, confronted her while at work and verbally berated her in response to the additional training proposal that Ranch management had approved.

70. For retaliatory reasons and motivation, the Supervisor, Brooke Bucher, expressed anger toward Ms. Rhoten, raised her voice, and overtly and aggressively challenged Ms. Rhoten for seeking out the educational opportunity without going through her (the Supervisor).

71. The retaliatory treatment by the Supervisor, Brooke Bucher, increased in frequency and severity.

72. On November 3, 2019, Ms. Rhoten's supervisor, Brooke Bucher, created a retaliatory scheme by which Ms. Rhoten was asked to perform a therapeutic massage on a client.

73. The therapeutic massage for the client, however, was actually a set-up by the Supervisor, Brooke Bucher, because the client was not a customer, but rather the Ranch food and beverage director, Christina.

74. After the massage, Christina seemed happy with the therapeutic services provided, and no complaints about the services were provide to Ms. Rhoten from the client.

75. On November 5, 2019 Ms. Rhoten was called in to talk with her supervisor, Brooke Bucher, because of a customer's complaint about the "face up" technique utilized by Ms. Rhoten as a safety measure, and consistent with her training.

76. Ms. Rhoten, however, learned that the "customer" who was ascribed as having this "complaint" was the Ranch Food and Beverage manager, Christina, who reportedly made the complaint according to the Supervisor, Brooke Bucher.

77. Ms. Rhoten emailed Christina about the complaint attributed to her by the Supervisor, Brooke Bucher, and regarding the substance of the complaint.

78. Christina then responded to Ms. Rhoten's email and said that she had never made a complaint of that nature.

79. The Supervisor's retaliation continued and became more expansive after Ms. Rhoten challenged her on the substance and validity of the "face up" technique complaint.

80. Ms. Rhoten's Supervisor, Brooke Bucher, used her position and power as a means of coercing employees to help with personal matters, and it is known among the employees that refusing to succumb to this coercion results in retaliation by the Supervisor.

81. On November 3, 2019, the Supervisor, Brooke Bucher, asked Ms. Rhoten if she would help with her child's ballet class on November 3rd and 4th.

82. Ms. Rhoten responded that she could not help due to her current schedule and other personal commitments.

83. After that request from Brooke Bucher, and Ms. Rhoten's declination to help, her shifts were significantly reduced and Ms. Rhoten started working at the resort administration, performing the night audits.

84. In mid-December 2019, Ms. Rhoten returned to work at the Spa at the request of a repeat customer with whom she had developed a valuable professional relationship and joint treatment confidence.

85. In response, Ms. Rhoten's supervisor, Brooke Bucher, wrote multiple e-mails to Ms. Rhoten telling her that she did not want Ms. Rhoten returning to work as a massage therapist at the Spa.

86. On January 19, 2020, Ms. Rhoten had a meeting for an end of year review with Ranch supervisors Justin Robbins and Catherine Johnson.

87. During this year-end review, Ms. Rhoten made repeated, and formalized, a complaint about the discriminatory and retaliatory behavior that her supervisor, Brooke Bucher, was exhibiting.

88. Neither Robbins nor Johnson, nor any other Ranch management personnel, investigated Ms. Rhoten's complaint.

89. On February 7, 2020, Ms. Rhoten received the executed evaluation, but the evaluation was different from the one presented and discussed in January 2020.

90. The executed version of Ms. Rhoten's evaluation appeared edited by Ms. Rhoten's supervisor, Brooke Bucher, and it now reflected pre-emptively inserted complaints Ms. Rhoten had made

to Justin Robbins and Catherine Johnson in the January 19, 2020 meeting, and it contained a plethora of pre-textual reasons to disguise the discriminatory and retaliatory conduct by the supervisor, Brooke Bucher.

91. On February 8, 2020, while off campus at a social event, and not at work, Ms. Rhoten's supervisor, Brooke Bucher, informed her that there would be a "hot stone" training the next day.

92. On February 9, 2020, Ms. Rhoten went to the training offered by the new Operations Director, Linda Walser.

93. Linda Walser provided an explanation and examples of the technique to the employees involved in the training, including Ms. Rhoten.

94. Out of all the attendees present, Ms. Rhoten was chosen to demonstrate the new technique on Brooke Bucher.

95. Ms. Bucher had suffered a back injury a few months prior and Ms. Rhoten did not feel comfortable performing any technique due to Ms. Bucher's injury.

96. Ms. Rhoten was also suspicious as to (i) why she was chosen from the entire group, and (ii) why she was being asked to perform a new technique on a manager as opposed to another employee. The entire situation was perceived as another managerial "set-up" like the last incident involving the massage on the Food and Beverage manager, that was followed by a reported complaint that was contradicted by the employee.

97. Ms. Bucher expressed visible anger, and Ms. Rhoten was asked to leave the training session by Ms. Bucher.

98. Ms. Bucher, after demanding Ms. Rhoten to leave, stated, "We are going to Jon Martin's office in the morning and you are turning in your letter of resignation. Now leave."

99.   Upon information and belief, no other employee was subsequently asked to perform the new technique after Ms. Rhoten left.

100.  Later, on February 9, 2020, Ms. Rhoten filed a formal complaint with human resources. The complaint was about Brooke, Ms. Rhoten's direct supervisor, and her retaliatory behavior. In response, Ms. Rhoten was taken off the Spa work schedule.

101.  On February 10, 2020, a meeting was held with Ms. Rhoten, Jon Martin, and Catherine Johnson to discuss the formal complaint.

102.  On February 16, 2020, an investigation was conducted by Catherine Johnson, and it was related to Ms. Rhoten that the investigation concluded, that Ms. Rhoten was toxic, and she was asked to resign by Jon Martin and Catherine Johnson.

103.  Ms. Rhoten refused to resign.

104.  The Ranch subsequently had to close due to the COVID Pandemic; Ms. Rhoten has been receiving unemployment benefits as an attached, but seasonal employee.

105.  On May 8, 2020, Ms. Rhoten filed a Charge of Discrimination with the EEOC against The Ranch.

106.  Later that day, Human Resources Manager, Catherine Johnson, sent Ms. Rhoten an e-mail requesting a meeting on Tuesday, May 12, 2020.

107.  Ms. Rhoten responded to the email by asking for the agenda and who would attend the meeting.

108.  On May 10, Catherine responded stating the meeting was to discuss The Ranch's future as we plan to reopen.

109.  On May 11, The Ranch sent Ms. Rhoten a termination notice.

## V.
## CLAIMS AND CAUSES OF ACTION

### Count 1
### WRONGFUL DISCHARGE – M.C.A. § 39-2-904(1)(c)

110. Plaintiff herein realleges paragraphs 1 through 109 above as though fully set forth herein.

111. Ms. Rhoten was a non-probationary employee of the Ranch.

112. The Ranch terminated Ms. Rhoten's employment on May 11, 2020.

113. The termination did not follow the Ranch disciplinary policy; the Ranch Employee Handbook outlines a Progressive Disciplinary process in Section 716, and those progressive disciplinary policy and procedure steps were not followed.

114. Instead, the Employer terminated Ms. Rhoten the day after it learned she filed a Charge of Discrimination with the EEOC.

115. A termination that involves an employer failing to follow its own policies violates the Montana Human Rights Act, M.C.A. § 39-2-904(1)(c).

116. The termination has caused Ms. Rhoten to lose gainful employment, lost wages, loss of benefits, and costs associated with the pursuit of new employment.

### Count 2
### WRONGFUL DISCHARGE – M.C.A. § 39-2-904(1)(b)

117. Plaintiff herein realleges paragraphs 1 through 116 above as though fully set forth herein.

118. Ms. Rhoten was a non-probationary employee of the Ranch.

119. The Ranch terminated Ms. Rhoten's employment on May 11, 2020.

120. The termination was not for good cause, as required by Montana law.

121. A termination that involves an employer terminating employment without good cause violates the Montana Human Rights Act, M.C.A. § 39-2-904(1)(b).

122. The termination has caused Ms. Rhoten to lose gainful employment, lost wages, loss of benefits,

and costs associated with the pursuit of new employment.

### Count 3
#### WRONGFUL DISCHARGE – M.C.A. § 39-2-904(1)(a)

123. Plaintiff herein realleges paragraphs 1 through 122 above as though fully set forth herein.

124. Ms. Rhoten was a non-probationary employee of the Ranch.

125. The Ranch terminated Ms. Rhoten's employment on May 11, 2020.

126. On May 8, 2020 Ms. Rhoten filed a Charge of Discrimination with the EEOC over employer

conduct constituting sexual harassment and retaliation.

127. A termination that is in retaliation for the employee's reporting a violation of public policy,

which reporting sexual harassment involves, violates the Montana Human Rights Act, M.C.A.

§ 39-2-904(1)(a).

128. The retaliatory termination has caused Ms. Rhoten to lose gainful employment, lost wages,

loss of benefits, and costs associated with the pursuit of new employment.

### Count 4
#### DISABILITY DISCRIMINATION – M.C.A. § 49-2-303(1)(a)

129. Plaintiff herein realleges paragraphs 1 through 128 above as though fully set forth herein.

130. Under the Montana Human Rights Act, M.C.A. § 49-2-303(1)(a),  which states that it is an

unlawful discriminatory practice for:

> (a) an employer to refuse employment to a person, to bar a person from
> employment, or to discriminate against a person in compensation or in a term,
> condition, or privilege of employment because of race, creed, religion, color, or
> national origin or because of age, physical or mental disability, marital status,
> or sex when the reasonable demands of the position do not require an age,
> physical or mental disability, marital status, or sex distinction.

131. Ms. Rhoten suffers from Post-Traumatic Stress Disorder, a recognized disability.

132. Ms. Rhoten informed the Ranch of her disability; the Ranch new of Ms. Rhoten's disability.

133. The Ranch discriminated against Ms. Rhoten based on her disability by creating a work environment which aggravated her disability, which caused the exacerbation of her medical condition, and which manifested in physical harm and emotional distress directly caused by the Ranch's conduct.

134. Ms. Rhoten has suffered financial damage, physical harm both in physical pain and emotional distress, and economic hardship due to the actions of The Ranch.

### Count 4
### DISABILITY DISCRIMINATION – M.C.A. § 49-1-102(1)(a)

135. Plaintiff herein realleges paragraphs 1 through 134 above as though fully set forth herein.

136. Under the Montana Human Rights Act, M.C.A. § 49-1-102(1)(a), Ms. Rhoten has a right to be free from discrimination because of race, creed, religion, color, sex, physical or mental disability, age, or national origin as a civil right. This right includes:

> (a) the right to obtain and hold employment without discrimination; and
> (b) the right to the full enjoyment of any of the accommodation facilities or privileges of any place of public resort, accommodation, assemblage, or amusement.

137. Ms. Rhoten suffers from Post-Traumatic Stress Disorder, a recognized disability.

138. Ms. Rhoten informed the Ranch of her PTSD disability; the Ranch knew of Ms. Rhoten's disability.

139. The Ranch discriminated against Ms. Rhoten based on her disability by creating a work environment which aggravated her disability, which caused the exacerbation of her medical condition, and which manifested in physical harm and emotional distress directly caused by the Ranch's conduct.

140. Ms. Rhoten has suffered financial damage, physical harm both in physical pain and emotional distress, and economic hardship due to the actions of The Ranch.

### Count 5
**DISABILITY DISCRIMINATION – FAILING TO PROVIDE REASONABLE ACCOMMODATION**

141. Plaintiff herein realleges paragraphs 1 through 140 above as though fully set forth herein.

142. Under the Montana Human Rights Act, M.C.A. § 49-2-303, it is an unlawful discriminatory practice to refuse a reasonable accommodation in the terms and conditions of employment based on a disability.

143. Ms. Rhoten suffers from Post Traumatic Stress Disorder, a recognized disability.

144. Ms. Rhoten informed the Ranch of her disability; the Ranch knew of Ms. Rhoten's disability.

145. The Ranch then failed to make reasonable accommodations for Ms. Rhoten after accommodations were requested.

146. Ms. Rhoten has suffered financial damage, physical harm both in physical pain and emotional distress, and economic hardship due to the actions of The Ranch.

### Count 6
**EMPLOYMENT DISCRIMINATION – RETALIATION – M.C.A. § 49-2-301**

147. Plaintiff herein realleges paragraphs 1 through 147 above as though fully set forth herein.

148. Under the Montana Human Rights Act, M.C.A. § 49-2-301, it is an unlawful discriminatory practice for a person, educational institution, financial institution, or governmental entity or agency to discharge, expel, blacklist, or otherwise discriminate against an individual because the individual has opposed any practices forbidden under this chapter or because the individual has filed a complaint, testified, assisted, or participated in any manner in an investigation or proceeding under Chapter 49.

149. Ms. Rhoten suffers from Post-Traumatic Stress Disorder, a recognized disability.

150. Ms. Rhoten informed the Ranch of her disability; the Ranch knew of Ms. Rhoten's disability.

151. The Ranch then failed to make reasonable accommodations for Ms. Rhoten after accommodations were requested.

152. Throughout the first months of her employment, Ms. Rhoten reported incidents of sexual harassment, retaliation, and discrimination to her supervisors:

  a. On or about June 14, 2019

  b. June 30, 2019;

  c. On or about August 10, 2019; and

  d. January 19, 2020.

153. No investigation was undertaken by the Ranch in violation of the employer's employee handbook and anti-discrimination policy.

154. In response to the reporting, the Employer engaged in retaliatory actions that interfered with or hampered the terms and conditions of her employment.

155. On May 8, 2020, Ms. Rhoten filed a Charge of Discrimination with the EEOC.

156. On May 11, 2020, the Ranch terminated Ms. Rhoten.

157. The Ranch engaged in acts of retaliation in violation of the Montana Human Rights Act, M.C.A. § 49-2-301, making the terms and conditions of her employment less desirable in retaliation for her reporting sexual harassment, retaliation, and discrimination.

158. The Ranch termination of Ms. Rhoten's employment was retaliatory and in violation of the Montana Human Rights Act, M.C.A. § 49-2-301.

159. Ms. Rhoten has suffered financial damage, physical harm both in physical pain and emotional distress, and economic hardship due to the actions of The Ranch.

### Count 7
**EMPLOYMENT DISCRIMINATION – AIDING, COERCING, OR ATTEMPTING — M.C.A. § 49-2-302**

160. Plaintiff herein realleges paragraphs 1 through 159 above as though fully set forth herein.

161. Under the Montana Human Rights Act, M.C.A. § 49-2-302, it is unlawful for a person, educational institution, financial institution, or governmental entity or agency to aid, abet, incite, compel, or coerce the doing of an act forbidden under Chapter 49 or to attempt to do so.

162. Ms. Rhoten's position was a massage therapist for the Spa at the Ranch.

163. The Ranch offered Spa services, including massages, to clients at the resort.

164. The very nature of massage services inherently creates a risk of potential sexual harassment of employees, especially female employees with male clients, because the services are routinely performed in a private room, with the male client naked and only covered by towels, and the required touching by the female massage therapist.

165. The inherent risk of sexual harassment by male clients, against female employees, was known to or knowable by the Ranch.

166. The Ranch failed to provide a safe workplace as required by M.C.A. § 50-71-201.

167. Rather, the Ranch fostered, aided, coerced, or facilitated the male client harassment of female massage therapists, including Ms. Rhoten, through their implicit approval of the seeking out a "happy ending" by male clients.

168. Specifically, Jon Martin, the Ranch Manager, was involved in a conversation with Ranch male clients who were regaling each other about receiving "special massages" and the implication was explicit – male clients received sexual favors from Ranch personnel.

169. Ms. Rhoten informed the Ranch of multiple incidents of male clients seeking sexual favors, engaging in sexual harassment, or attempting to get her to perform a sex act, as follows at a minimum:

    a.  On or about June 14, 2019

    b.  June 30, 2019;

    c.  On or about August 10, 2019; and

    d.  January 19, 2020.

170. No investigation was undertaken by the Ranch in violation of the employer's employee handbook and anti-discrimination policy.

171. The Ranch actively prohibited Ms. Rhoten from enacting massage techniques and methodology that, from her professional training reduced the propensity for male solicitation of sex acts during a massage.

172. The Ranch actively prohibited Ms. Rhoten from leaving the private massage rooms in response to male solicitations of sex acts, unless it was necessary to prevent physical harm.

173. The Ranch responded to these reports, and the May 8, 2020 Charge of Discrimination, by making the terms and conditions of her employment less desirable and ultimately terminating her employment 3 days after she filed the Charge of sexual harassment, retaliation, and discrimination.

174. The Ranch's tacit approval of solicitation of sexual favors by clients, the overt prohibition of safety techniques being implemented, the implementation of a procedure that required female employees to accept, remain in the room, and tolerate verbal sexual solicitation, and the failure to remediate known and reported acts of sexual harassment aided, coerced, and attempted sexual harassment in violation of the Montana Human Rights Act, M.C.A. § 49-2-302.

175. Ms. Rhoten has suffered financial damage, physical harm both in physical pain and emotional distress, and economic hardship due to the actions of The Ranch.

## Count 8
### NEGLIGENCE – FAIL TO PROVIDE A SAFE WORKPLACE

176. Plaintiff herein realleges paragraphs 1 through 175 above as though fully set forth herein.

177. Under Montana law, M.C.A. § 50-71-201, the Ranch had a duty to provide a workplace that was safe for the employees, including Ms. Rhoten.

178. Ms. Rhoten's position was a massage therapist for the Spa at the Ranch.

179. The Ranch offered Spa services, including massages, to clients at the resort.

180. The very nature of massage services inherently creates a risk of potential sexual harassment of employees, especially female employees with male clients, because the services are routinely performed in a private room, with the male client naked and only covered by towels, and the required touching by the female massage therapist.

181. The inherent risk of sexual harassment by male clients, against female employees, was known to or knowable by the Ranch.

182. The Ranch failed to provide a safe workplace as required by M.C.A. § 50-71-201.

183. Rather, the Ranch fostered, aided, coerced, or facilitated the male client harassment of female massage therapists, including Ms. Rhoten, through their implicit approval of the seeking out a "happy ending" by male clients.

184. Specifically, Jon Martin, the Ranch Manager, was involved in a conversation with Ranch male clients who were regaling each other about receiving "special massages" and the implication was explicit – male clients received sexual favors from Ranch personnel.

185. Ms. Rhoten informed the Ranch of multiple incidents of male clients seeking sexual favors, engaging in sexual harassment, or attempting to get her to perform a sex act, as follows at a minimum:

    a. On or about June 14, 2019

    b. June 30, 2019;

    c. On or about August 10, 2019; and

d.   January 19, 2020.

186. No investigation was undertaken by the Ranch in violation of the employer's employee handbook and anti-discrimination policy.

187. The Ranch actively prohibited Ms. Rhoten from enacting massage techniques and methodology that, from her professional training reduced the propensity for male solicitation of sex acts during a massage.

188. The Ranch actively prohibited Ms. Rhoten from leaving the private massage rooms in response to male solicitations of sex acts, unless it was necessary to prevent physical harm.

189. The Ranch responded to these reports, and the May 8, 2020 Charge of Discrimination, by making the terms and conditions of her employment less desirable and ultimately terminating her employment 3 days after she filed the Charge of sexual harassment, retaliation, and discrimination.

190. The Ranch's tacit approval of solicitation of sexual favors by clients, the overt prohibition of safety techniques being implemented, the implementation of a procedure that required female employees to accept, remain in the room, and tolerate verbal sexual solicitation, and the failure to remediate known and reported acts of sexual harassment breached its duty by, including but not limited to:

   a.   furnish a place of employment that is safe for each of the employer's employees;
   b.   adopt and use practices, means, methods, operations, and processes that are reasonably adequate to render the place of employment safe; and/or
   c.   do any other thing reasonably necessary to protect the life, health, and safety of the employer's employees.

   Mont. Code Ann. § 50-71-201

191. The Ranch's breach of duty has caused damage and harm to Ms. Rhoten.

192. Ms. Rhoten has suffered financial damage, physical harm both in physical pain and emotional distress, and economic hardship due to the actions of The Ranch.

## Count 9
### NEGLIGENCE – FAILURE TO SUPERVISE

193. Plaintiff herein realleges paragraphs 1 through 192 above as though fully set forth herein.

194. As an employer, the Ranch has a duty to supervise its employees, including supervisors.

195. The Ranch breached that duty when it failed to investigate the reports of sexual harassment made to supervisors by Ms. Rhoten, including but not limited to:

  a. On or about June 14, 2019

  b. June 30, 2019;

  c. On or about August 10, 2019; and

  d. January 19, 2020.

196. The Ranch Employee Handbook, 2018, provides in Section 703 that "[a]ll allegations of sexual harassment will be quickly and discreetly investigated. . . . When the investigation is completed, you will be informed of the outcome of the investigation."

197. The Ranch did not investigate the reported incidents of sexual harassment made by Ms. Rhoten; the Ranch did not investigate why the supervisor to which the reports were made did not conduct an investigation and Human Resources notification as required by policy.

198. The Ranch Employee Handbook, 2018, provides in Section 522 that "[c]onduct that threatens, intimidates, or coerces another employee, a customer, or member of the public at any time, including off-duty periods, will not be tolerated. This prohibition includes all acts of harassment, including harassment that is based on an individual's sex, race, age, or any characteristic protected by federal, state, or local law. . . . . The Ranch will promptly and thoroughly investigate all reports of threats of (or actual) violence and of suspicious

individuals or activities. . . .  Anyone determined to be responsible for threats of (or actual) violence or other conduct that is in violation of these guidelines will be subject to prompt disciplinary action up to and including termination of employment."

199. No investigation of the above threats, suspicious activity, sexual advances, or harassment were conducted in response to Ms. Rhoten's reports.

200. No investigation of threats and intimidation by Supervisor, Brooke Bucher, in response to Ms. Rhoten's report of Supervisor, Brooke Bucher, coercing employees to help with her social activities, her retaliation of Ms. Rhoten, or the other retaliatory actions taken by Supervisor, Brooke Bucher.

201. Rather, the Ranch fostered an atmosphere of oppression, unbridled submission to supervisory conduct, and the acceptance of retaliatory actions taken by supervisors in response to reports of supervisory misconduct.

202. Further, the Ranch, fostered a resort atmosphere with clients that aided, coerced, or facilitated the male clientele approved harassment of female massage therapists, including Ms. Rhoten, through their implicit approval of the seeking out a "happy ending" by male clients.

203. Specifically, Jon Martin, the Ranch Manager, was involved in a conversation with Ranch male clients who were regaling each other about receiving "special massages" and the implication was explicit – male clients received sexual favors from Ranch personnel.

204. No investigation was undertaken by the Ranch in violation of the employer's employee handbook and anti-discrimination policy.

205. No investigation and remediation of supervisor misconduct was undertaken by the Ranch in violation of the employer's employee handbook and the employee conduct and work rules policy.

206. The Ranch responded to Ms. Rhoten's reports, and the May 8, 2020 Charge of Discrimination, by tolerating the actions of supervisors, abdicating its oversight responsibilities to supervise employees, when the supervisors made the terms and conditions of her employment less desirable and ultimately terminating her employment 3 days after she filed the Charge of Discrimination alleging sexual harassment, retaliation, and discrimination.

207. The Ranch's tacit approval of solicitation of sexual favors by clients, the overt prohibition of safety techniques being implemented, the implementation of a procedure that required female employees to accept, remain in the room, and tolerate verbal sexual solicitation, and the failure to remediate known and reported acts of sexual harassment further breached its duty by, including but not limited to, failing to ensure supervisors:

    a.   furnished a place of employment that is safe for each of the employer's employees;
    b.   adopted and used practices, means, methods, operations, and processes that are reasonably adequate to render the place of employment safe; and/or
    c.   failed to do any other thing reasonably necessary to protect the life, health, and safety of the employer's employees.

208. The Ranch's breach of duty has caused damage and harm to Ms. Rhoten.

209. Ms. Rhoten has suffered financial damage, physical harm both in physical pain and emotional distress, and economic hardship due to the actions of The Ranch.

## VI.
## Exemplary Damages

210. Under MCA § 39-2-905(2), an "employee may recover punitive damages…if it is established by clear and convincing evidence that the employer engaged in actual fraud or actual malice in the discharge of the employee in violation of *39-2-904*."

211. Ms. Rhoten was terminated out of retaliation for her filing an EEOC Charge of Discrimination in violation of MCA § 39-2-904 and as such is entitled to punitive damages.

212. The Ranch's conduct was motivated by malice; the Ranch had knowledge of facts or intentionally disregarded facts that create a high probability of injury to the plaintiff and:

> (a) deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
> (b) deliberately proceeded to act with indifference to the high probability of injury to the plaintiff.

213.    Plaintiff is therefore entitled to punitive damages under Mont. Code Ann. § 27-1-221.

## VII.
### Attorney Fees

214. Ms. Rhoten is entitled to attorney fees and costs as the prevailing party in this matter according to M.C.A. § 49-2-512(3).

### Prayer for Relief

Wherefore, Plaintiff prays for relief as follows:

1.    An award of lost wages for four (4) years from the date of termination;

2.    An award of economic damages incurred as a result of wrongful discharge;

3.    An award of special damages incurred as a result of wrongful discharge;

4.    An award of damages sustained by The Ranch's discriminatory acts based on Ms. Rhoten's disability in violation of M.C.A. § 49-2-303(1)(a);

5.    An award of damages sustained The Ranch's discriminatory acts based on Ms. Rhoten's disability in violation of M.C.A. § 49-1-102(1)(a);

6.    An award of damages sustained for failure to make reasonable accommodations under the M.C.A. § 49-2-303;

7.    An award of damages sustained due to the retaliatory acts of The Ranch in violation of M.C.A. § 49-2-301;

8. An award of damages as a result of discrimination based on sexual harassment which was aided, coerced, or attempted by The Ranch in violation of M.C.A. § 49-2-302;

9. An award of damages for the negligent failure of The Ranch to provide a safe workplace;

10. An award of damages for the negligent failure of The Ranch to supervise all of its employees including supervisors;

11. An award of costs for past, present, and future medical and counsel expenses related to The Ranch's actions and inactions;

12. An award of court costs and attorney fees;

13. An award of punitive damages as permitted by law; and

14. For any other relief the Court deems just under the circumstances.

Dated this 23rd day of March, 2021.

/s/ *Lawrence E. Henke*
Lawrence E. Henke
Addam D. Pincock
Attorneys for the Plaintiff

## **DEMAND FOR JURY TRIAL**

Comes now the Plaintiff, by and through her counsel, and hereby demands a jury trial.

Dated this 23rd day of March, 2021.

/s/ *Lawrence E. Henke*
Lawrence E. Henke
Addam D. Pincock
Attorneys for the Plaintiff

## VERIFICATION

STATE OF MONTANA               )
                               :ss
County of _Missoula_           )

The undersigned, being first duly sworn upon his oath, deposes and says:

That I have read the foregoing COMPLAINT AND DEMAND FOR JURY TRIAL and

hereby verify that the facts and information contained therein is true and correct to the best of my

knowledge and belief.

DATED this 24th day of March, 2021.

Brenda Rhoten

BRENDA RHOTEN

Subscribed and sworn to before me this 24th day of March, 2021.

ANDREW L BRUNKHART
NOTARY PUBLIC for the
State of Montana
Residing at Missoula, Montana
My Commission Expires
October 30, 2022
SEAL

Notary Public for the State of MT
Printed Name:
Residing at:
My Commission Expires: