IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRENDA RHOTEN, | CV 21–46–M–DLC |
| Plaintiff and Counterclaim-Defendant, | |
| vs. | ORDER |
| ROCKING J. RANCH, LLC dba THE RANCH AT ROCK CREEK, | |
| Defendant and Counterclaim-Plaintiff. | |

Before the Court is Defendant and Counterclaim-Plaintiff Rocking J. Ranch, LLC's ("The Ranch") motion to dismiss. (*See* Doc. 4, incorporated into Doc. 12.) The Ranch seeks dismissal of Counts 3, 9, and 10 of Plaintiff and Counterclaim-Defendant Brenda Rhoten's First Amended Complaint. (Doc. 13 at 2.) For the reasons stated herein, this Court will grant The Ranch's motion.

**BACKGROUND**

### I. FACTUAL BACKGROUND[1]

Rhoten is a professionally trained and experienced massage therapist. (Doc.

---

[1] Because this matter comes before the Court through a Rule 12(b)(6) motion to dismiss (Docs. 4; 12), this background is derived by accepting the facts alleged in Rhoten's first amended complaint (Doc. 9) as true. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013).

1

9 at 5–6.)  Rhoten's education and professional experience has taught her "therapeutic methodologies" designed to minimize the risk of sexual harassment by male customers.  (*Id.* at 6–7.)   In June 2019, Rhoten began working as a massage therapist at The Ranch.  (*Id.* at 7.)

During her second week at The Ranch, Rhoten was scheduled to provide a male customer a deep tissue massage.  (*Id.*)  To avoid sexual propositioning, Rhoten deployed one of her professional techniques designed at minimizing sexual harassment, which involved asking the customer "who was lying face down, to flip over to start the massage."  (*Id.*)  "This technique would ensure that the massage ended with the male customer face down, not face up and body up exposing his genitals at the end."  (*Id.*)  The client was upset with this request and complained to Rhoten's supervisor, Brooke Bucher, about her massage technique.  (*Id.* at 8.) Rhoten responded to the complaint by explaining that the customer expected "something more than just a 'deep tissue massage' during the session."  (*Id.*) Bucher seemed skeptical and brushed off Rhoten's concerns.  (*Id.*)

Then, on June 30, 2019, Rhoten was "conducting a full body massage on a male client" when he asked if she could rub him "all over."  (*Id.*)  Rhoten believed the male client was really asking for a sexual favor, refused, and "brought this obvious sexual proposition" to the attention of Bucher.  (*Id.*)  Bucher was again dismissive of Rhoten and did not investigate the matter.  (*Id.* at 8–9.)  Rhoten then

became concerned that "sexual favors were considered part and parcel" of her job for The Ranch and communicated to Bucher that if she was sexually propositioned again, she would, as trained, leave the room to diffuse the situation. (*Id.* at 9.) Bucher told her that would be unprofessional and was "not the way they did things at the Ranch." (*Id.*)

In response, Rhoten made a formal complaint to The Ranch's General Manager, Jon Martin, and Human Resource Director, Catherine Johnson, about the incidents and Bucher's dismissal of her concerns. (*Id.* at 10.) A meeting was held, during which Martin told Rhoten that regular clients of The Ranch had made jokes about getting a "special massage" while at The Ranch and overall did nothing to address her concerns. (*Id.*)

In August 2019, The Ranch assigned Rhoten a married male client for massage services. (*Id.*) During the massage, the client asked her personal questions about her relationship status, which after she attempted to deflect, became more aggressive and intimate. (*Id.* at 11.) The situation eventually became so "severe" that Rhoten ended the client's massage five minutes early "to avoid the advances." (*Id.*) Rhoten brought the client's conduct and the fact that she ended the session early to Bucher's immediate attention. (*Id.*) Bucher did not investigate the claim, pressed her on why she thought the client's behavior was inappropriate, and told her that she should never end a session early, "regardless of

the situation created by the client." (*Id*.)

After these three separate incidents with male clients, Rhoten began using different techniques, to lessen the chance of male clients requesting sexual favors from her. (*Id*. at 12.) The Ranch was "strongly opposed" to these techniques, however, and Bucher specifically prohibited Rhoten from using them. (*Id.*) Bucher also began engaging in retaliatory and harassing behavior within the workplace directed at Rhoten. (*Id*.) Specifically, Bucher purposefully and sarcastically reported to other employees that Rhoten experienced an incident involving an older male client who made sexual advances toward her. (*Id*. at 12–13.) Bucher also retaliated against her by scheduling her erratically, calling her in on her days off, and making her job more difficult. (*Id*. at 13.) The foregoing significantly impacted Rhoten's pre-existing Post Traumatic Stress Disorder, of which The Ranch was aware of when it hired her. (*Id.* at 14.)

On January 19, 2020, Rhoten met with Justin Robbins and Catherine Johnson for an end of year review. (*Id*. at 17.) During this meeting, Rhoten repeated her past complaints regarding client sexual harassment and formalized a complaint regarding Bucher's "discriminatory and retaliatory behavior." (*Id*. at 18.) No investigation into these complaints occurred. (*Id*.) On February 7, 2020, Rhoten received a copy of the executed evaluation, but it appeared different from the one presented to her at the January meeting. (*Id*.) It appears Bucher edited the

evaluation and made preemptive responses to dismiss the complaints Rhoten raised.  (*Id*.)

Bucher's retaliatory conduct continued, and she eventually asked Rhoten to resign.  (*Id.* at 18–20.)  Rhoten refused to resign and continued to report Bucher's misconduct to her superiors, who continued to do nothing.  (*Id.* at 20.)  On May 8, 2020, Rhoten filed a Charge of Discrimination against The Ranch with the United States Equal Employment Opportunity Commission ("EEOC"), complaining of the foregoing conduct.  (*Id*.)  In response, The Ranch terminated Rhoten on May 11, 2021.  (*Id*.)

## II.   PROCEDURAL BACKGROUND

Rhoten filed her first complaint in Montana state court on March 24, 2021.  (Doc. 1-2.)  The Ranch removed the case to this Court on April 16, 2021.  (Doc. 1.)  Then, The Ranch moved to dismiss Counts 3, 8, and 9 of the original complaint.  (Doc. 4.)  Rhoten responded to this motion, but also filed an amended complaint on May 6, 2021, adding three new claims premised under federal law.  (Docs. 8–9.)  The Ranch filed its reply brief on May 13, 2021.  (Doc. 11.)

In response to the amended complaint, The Ranch filed another motion to dismiss.  (Doc. 13.)  In its opening brief, The Ranch renewed its argument as to the sufficiency of Counts 3, 8, and 9 (now Counts 3, 9, and 10), contained in its briefing on the original motion to dismiss.  (Doc. 13 at 2.)  The Ranch also

challenged the three new federal counts (Counts 11–13) on the basis that they were barred by the applicable statute of limitations.  (*Id.* at 3–5.)  The Ranch ultimately withdrew its motion to dismiss to the extent it challenged Counts 11–13.  (Doc. 21 at 3.)

To the extent The Ranch's first motion to dismiss (Doc. 4) targeted Rhoten's original complaint, the filing of an amended complaint rendered it moot.  *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Because The Ranch has brought another motion, however, incorporating the same arguments for dismissal of Counts 3, 8, and 9 of the original complaint to support its request to dismiss Counts 3, 9, and 10 of the amended complaint, the Court will consider the briefing as to the original motion.  *Stamey v. Howell*, 2016 WL 7174613, *1 (D. Mont. 2016).  With this in mind, the Court will turn its attention to the merits of The Ranch's motion.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for failure to state a claim.  A Rule 12(b)(6) dismissal "is essentially a ruling on a question of law" and the purpose of Rule 12(b)(6) motions "is to test the legal sufficiency of the complaint."  *North Star Intern v. Arizona Corp. Com'n,* 720 F.2d 578, 580-81 (9th Cir. 1983).  "In order to survive a [R]ule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is

6

plausible on its face." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This Court must take plaintiff's well-pleaded allegations as true by "drawing all reasonable inferences in the plaintiff's favor" before concluding whether "the allegations are sufficient as a legal matter" to state a cognizable claim for relief. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**ANALYSIS**

Because it is exercising diversity jurisdiction, this Court will apply the substantive law of Montana when examining the sufficiency of Rhoten's claims brought under state law. *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 718, 624 (9th Cir. 1996). The Court addresses the sufficiency of each challenged claim in turn below.

## I.    Count 3.

Rhoten's third claim alleges The Ranch unlawfully terminated her in violation of Montana's Wrongful Discharge from Employment Act ("WDEA"). (Doc. 9 at 22–23.) The substance of this claim is that The Ranch terminated Rhoten, a non-probationary employee, in retaliation for filing a Charge of Discrimination with the EEOC regarding its "conduct constituting sexual

harassment and retaliation." (Doc. 9 at 22). In other words, Rhoten's third claim

complains that the Ranch terminated her for reporting a public policy violation

(i.e., sexual harassment and retaliation), in violation of the WDEA. (*Id.* at 22–23.)

The Ranch argues this claim is precluded by the Montana Human Rights Act

("MHRA"). (Doc. 5 at 8.) Specifically, The Ranch contends that Count 3 alleges

retaliation for reporting conduct that expressly violates the MHRA. (*Id.* at 8–10.)

Because the MHRA provides the exclusive remedy for such conduct, The Ranch

argues Count 3 fails because it seeks redress under the WDEA. (*Id.*) In response,

Rhoten argues that she has permissibly engaged in alternative pleading, that she

has complied with the MHRA's exhaustion requirements, and that she has properly

stated a retaliation claim. (Doc. 8 at 2–11.) The Court agrees with The Ranch that

Count 3 is barred by the WDEA.

The WDEA prohibits an employer's termination of a non-probationary

employee "in retaliation for the employee's refusal to violate public policy or for

reporting a violation of public policy." Mont. Code Ann. § 39-2-904(1)(a).

Besides terminations that would violate a state or federal anti-discrimination

statute, the WDEA constitutes an employee's "exclusive remedy for a wrongful

discharge from employment." Montana Code Annotated §§ 39-2-902, 39-2-

912(a). One such anti-discriminatory statute is the MHRA, which prohibits sexual

discrimination in the workplace. *Id.* § 49-2-303(1)(a).[2]  The MHRA similarly forbids an employer from retaliating against an employee for reporting sex discrimination in the workplace. *Id.* § 49-2-301.  The MHRA generally constitutes "the exclusive remedy" for sex-based discrimination in the workplace, including claims alleging retaliation for reporting sex-based discrimination. *Id.* § 49-2-512(1).

The relationship between the competing exclusivity provisions of the WDEA and other state or federal anti-discrimination statutes is not easy to delineate, but the Court finds that several prior cases illustrate why Rhoten's third claim must be dismissed.  The Court begins with the Montana Supreme Court's decision in *Harrison v. Chance*, 797 P.2d 200 (Mont. 1990).  There, a woman resigned from her employment on the grounds that her employer "repeatedly made unwelcome sexual advances culminating in a demand that she either 'put out or get out.'" *Id.* at 202.  She subsequently sued her employer in state district court bringing various claims such as "tortious battery, intentional infliction of emotional distress, the tort of outrage, wrongful discharge, and breach of the implied covenant of good faith and fair dealing." *Id.* at 202, 205.

---

[2] The MHRA's prohibition on sex-based discrimination in the workplace naturally encompasses certain forms of sexual harassment. *See Montana State University-Northern v. Bachmeier*, 480 P.3d 233, 243 (Mont. 2021); *see also Arthur v. Pierre Ltd.*, 100 P.3d 987, (Mont. 2004) ("Sexual harassment constitutes sexual discrimination under the MHRA").

The state district court granted summary judgment in the employer's favor, concluding that because the crux of her complaint alleged sexual harassment, the MHRA constituted her exclusive remedy. *Id.* On appeal, the Montana Supreme Court affirmed, concluding that "any claim based on sexual harassment can be framed in terms of numerous tort theories," as the woman had done in this case, but that because "the gravamen of [her] claim is sexual harassment," it must be prosecuted through the MHRA. *Id.* at 205. Specifically, the Court noted that:

> Her claim of battery is based on an allegation that Chance forcefully kissed her against her will. The intentional infliction of emotional distress and outrage arise from charges that Chance repeatedly confronted Harrison with sexually explicit innuendos and offers. Likewise, the theories of wrongful discharge and breach of the implied covenant of good faith and fair dealing are based on Harrison's allegations that Chance's constant sexual harassment made her working conditions so intolerable that she was forced to resign.

*Id.* As such, the MHRA provided her with the exclusive remedy for seeking redress for such conduct. *Id.* To hold otherwise would, in the Montana Supreme Court's view, permit litigants to "re-characteriz[e] what is at heart a sexual discrimination claim," and "eviscerate the mandate of the Human Rights Commission." *Id.*

*Harrison*'s holding was bolstered several years later when the Montana Supreme Court decided *Arthur v. Pierre Ltd.*, 100 P.3d 987 (Mont. 2004). There, a woman complained she was being sexually harassed in the workplace and exhausted her administrative remedies under the MHRA before suing her employer

in state district court.  *Id.* at 990–91.  In her lawsuit, she advanced claims for: (1) failure to provide a safe place to work; (2) negligent retention of her harasser; (3) negligent supervision of her harasser; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) sexual harassment under the MHRA.  *Id.* at 991.  The state district court granted summary judgment in favor of the employer on the first five claims, concluding that such claims "were barred by the exclusive remedy provision of the MHRA."  *Id.*

On appeal, the Montana Supreme Court affirmed.  *Id.* at 994.  First, the Montana Supreme Court recognized its rule from *Harrison* that the MHRA's exclusivity provision will generally "bar[] a plaintiff from pursuing other tort claims where those claims arise from underlying allegations of sexual discrimination or harassment."  *Id.* at 992.  Second, the Court applied *Harrison* to conclude that all of the plaintiff's allegations, divided into multiple theories of liability, "if taken as true, clearly establish 'verbal or physical conduct of a sexual nature,' which constitutes sexual harassment."  *Id.* at 993.  As such, because her five non-MHRA claims were, at their core, recharacterized claims complaining of sexual harassment, the MHRA provided the exclusive remedy.  *Id.*

The Montana Supreme Court reached a result opposite to that found in the *Harrison-Arthur* line of cases in *Tonack v. Montana Bank of Billings*, 854 P.2d 326 (Mont. 1993).  There, a plaintiff sued her former employer under both the WDEA

and the federal Age Discrimination in Employment Act ("ADEA"), complaining she had been unlawfully terminated. *Id.* at 329. Critically, her WDEA claim and ADEA claim were based on "two separate and independent" theories of "why her termination from employment was unlawful." *Id.* at 332 (Trieweiler, J., concurring in part and dissenting in part).[3] That is, her WDEA claim was premised on her employer's alleged violation of its own employment manual, including its requirement that "oral warnings, a written reprimand, and supervised probation," must precede any termination, while her AEDA claim was premised exclusively on a theory of age discrimination. *Id.*

The case proceeded to a bench trial and plaintiff received "$111,270 in damages on her claims of wrongful discharge and age discrimination." *Id.* On appeal the Montana Supreme Court reversed. *Id.* at 331. Specifically, the Montana Supreme Court concluded that because plaintiff's claims under the ADEA and WDEA "relate to *one* discharge from employment . . . [she could] not recover under" both statutes. *Id.* (emphasis original). Instead, once the district court made a "factual determination that the ADEA applied to" her "discharge

---

[3] Oddly, this seemingly decisive fact appears only in Justice Trieweiler's concurrence and dissent. The majority opinion does not state otherwise, and instead, does not address the issue of factual separation between the WDEA and AEDA claims at all. *See Id.* at 331 (stating only that "Tonack's claims under both the ADEA and [WDEA] relate to *one* discharge from employment at the bank") (emphasis original). Ultimately, factual separation between WDEA and MHRA claims appears to be the decisive factor in applying the rule from *Tonack* as opposed to the rule from the *Harrison-Arthur* line of cases.

from employment" it was required to dismiss the WDEA claim. *Id.* The Montana Supreme Court was clear, however, that whether "a discharge will ultimately be 'subject to any other state or federal statute that provides a procedure or remedy for contesting the dispute' is not immediately known when a claim is filed." *Id.* This will not occur until "a finder of fact has made that determination or when judgment on the claim has otherwise been entered." *Id.*

If there was any tension between the *Harrison-Arthur* line of cases and the *Tonack* case, it was resolved by the Montana Supreme Court's decision in *Vettel-Becker v. Deaconess Med. Ctr. Of Billings, Inc.*, 177 P.3d 1034, 1036 (Mont. 2008). In *Vettel-Becker*, an employee sued his former employer alleging multiple theories of liability following his termination. *Id.* at 1039. This included claims alleging "(1) a WDEA violation; (2) employment discrimination based on his gender, religion (Episcopalian) and marital status; and (3) a claim for blacklisting and punitive damages." *Id.* The state district court dismissed the WDEA claim, "concluding that the MHRA provided the exclusive remedy for his discharge *and* discrimination claims because he raised the same facts in support of both claims." *Id*.

On appeal, the Montana Supreme Court reversed, discussing application of both the *Harrison-Arthur* line of cases and *Tonack* to the employee's lawsuit. *Id.* at 1040–42. Specifically, the Montana Supreme Court concluded that the

employee's WDEA claim should have been permitted to proceed because it did "not rest or depend upon establishing discrimination." *Id.* at 1042. This was because the employee's WDEA claim did not allege that his termination was discriminatory, but instead simply that it was not supported by legitimate business reasons. *Id.* That is, the employee's WDEA claim "rested on debunking the [employers] proffered legitimate business reasons for discharge by showing that they were false, whimsical, arbitrary or capricious," not upon some showing of discrimination. *Id.* at 1041–42.

Putting the foregoing cases together, the Court finds that simultaneous WDEA and MHRA claims, such as those brought by Rhoten here, are subject to the following principles. As the starting point, the Court must determine whether the WDEA claim rests on allegations of conduct that would violate the MHRA. If it does, then it must be dismissed because the MHRA's exclusivity provisions go into effect. If it does not, then it can proceed along with the MHRA claim until there is an affirmative determination (such as at trial or the summary judgment stage) whether the termination involved conduct proscribed by the MHRA. If the affirmative determination is that the termination violated the MHRA, then the MHRA constitutes the litigant's exclusive remedy for contesting the discharge. If the affirmative determination is that the termination did not violate the MHRA, then the separate and distinct WDEA claim can be adjudicated on the merits.

In other words, the critical factor separating permissible simultaneous WDEA and MHRA claims from impermissible simultaneous WDEA and MHRA claims is whether the WDEA claim rests on a theory separate from the discriminatory basis supporting the MHRA claim. If the WDEA claim alleges that the discharge was the result of the same discriminatory conduct prohibited by the MHRA, then the MHRA's exclusivity provisions go into effect and the WDEA claim must be dismissed. If, on the other hand, the WDEA claim alleges that the discharge was the result of non-discriminatory conduct separate and distinct from the discriminatory conduct supporting the MHRA claim, then both may proceed until an affirmative determination on the MHRA claim is made. If the MHRA claim prevails, then the "WDEA is inapplicable . . . because the [MHRA] claim will have provided the remedy for the wrongful discharge." *Winfield v. Blue Cross & Blue Shield of Mont.*, 2011 WL 13277747, *2 (D. Mont. 2011). If the MHRA claim fails, then the WDEA claim must be separately adjudicated on the merits. *Id.*

Applying these principles to Rhoten's complaint, the Court finds that her third claim is barred by the MHRA's exclusivity procedures. As noted above, Rhoten's third claim complains that The Ranch retaliated against her for reporting sexual harassment and retaliation to the EEOC. This is precisely the sort of discriminatory conduct prohibited by the MHRA. Mont. Code Ann. § 49-2-301.

In other words, the allegations forming the basis of Rhoten's third claim, brought under the WDEA, rest on allegations of conduct rendered expressly unlawful by the MHRA.  In this way, Rhoten's third claim is more akin to the sort of WDEA claims barred under the *Harrison-Arthur* line of cases, then to the WDEA claims permitted to proceed under *Tonack.*  As such, Rhoten's third claim—to the extent it alleges her termination was in retaliation for reporting conduct prohibited by the MHRA to the EEOC—cannot proceed under the WDEA and must be dismissed.[4]

This analysis is perhaps best illustrated by a fairly recent opinion from the Montana Supreme Court in *Lay v. State Dept. of Military Affairs, Disaster and Emergency Servs. Div.*, 351 P.3d 672, 673 (Mont. 2015).  In *Lay*, the plaintiff asserted that she had been wrongfully terminated by the State of Montana "in retaliation for" complaining that a co-worker "received favorable treatment for engaging in a sexual relationship with" her supervisor.  *Id.* at 673.  She brought several constitutional claims, a claim for wrongful discharge, and sought attorneys' fees.  *Id.*

The state district court granted summary judgment in favor of her employer, concluding that the MHRA provided the exclusive remedy because "while Lay had

---

[4] Put another way, this sort of claim must be brought in conformance with the provisions of the MHRA.  Rhoten's seventh claim for relief appears to do just that, (Doc. 9 at 26–27), but the Court, of course, expresses no views on the legal sufficiency of this claim, which is not challenged in the instant motion.

attempted to re-characterize her claims within her complaint, the gravamen of her claims remained sexual favoritism and retaliation." *Id.* at 673–74.  The Montana Supreme Court affirmed, concluding that the entire basis for her claim was that she was retaliated against for complaining about sexual favoritism in the workplace. *Id.* at 675.  When analyzing the gravamen of the complaint, the Court focused on the "nature of the alleged conduct."  *Id.*; *see also Saucier ex rel. Mallory v. McDonald's Restaurants of Mont., Inc*., 179 P.3d 481, 493 (Mont. 2008).  Because the nature of the alleged conduct in the complaint constituted sexual favoritism and the parties agreed that sexual favoritism constituted sexual harassment within the meaning of the MHRA, the Montana Supreme Court concluded that her "claims were subject to the procedures set forth in the MHRA."  *Lay*, 351 P.3d at 676.  The same is true in this case, for the reasons stated above.

In seeking to avoid this outcome, Rhoten devotes significant argument to her right to plead in the alternative under Rule 8 of the Federal Rules of Civil Procedure.  (Doc. 8 at 3–6.)  As Rhoten points out, the Federal Rules of Civil Procedure do specifically authorize alternative pleading.  Fed. R. Civ. P. 8(a)(3), (d)(2).  But a party cannot plead an incognizable claim alternative to a cognizable one.  *Cox v. Eichler*, 765 F. Supp. 601, 605 (N.D. Cal. 1990) (holding that a state law claim pre-empted by ERISA is invalid and therefore cannot be alternatively plead with a valid ERISA claim); *see also Pane v. RCA Corp.*, 667 F. Supp. 168,

17

171–72 (D. N.J. 1987) (holding "plaintiff cannot use the rules allowing alternative pleading as a defense to defendant's motion to dismiss" arguing plaintiff's alternative state law claim is preempted by ERISA).  This is precisely the case here.

As discussed at length above, Rhoten's third claim for relief, brought under the WDEA, is legally incognizable because it complains of retaliatory conduct specifically prohibited by the MHRA.  In other words, Rhoten's third claim fails to state a claim upon which relief can be granted because Montana law requires such claim to be prosecuted under and in conformance with the mandates of the MHRA. This conclusion does not change simply because Count 3 has been pled alternatively to the proper claim brought under the MHRA (Count 7).  Otherwise, litigants would simply be able to avoid the dismissal of invalid claims at the 12(b)(6) stage by pleading them alternatively to valid claims.  The "Rule of [Civil Procedure] are not so odd."  *Old Chief v. United States*, 519 U.S. 172, 184 (1997). Rhoten's third claim for relief will be dismissed.

## II.    Count 9.

Rhoten's ninth claim complains The Ranch violated its duty to provide her with a safe workplace, in violation of Montana Code Annotated § 50-71-201. (Doc. 9 at 30–33.)  The substance of this claim is that The Ranch: (1) knew of the inherent risk of sexual harassment to employees providing massage services; (2)

"fostered, aided, coerced, or facilitated" the sexual harassment of employees providing massage services by male clients; (3) failed to investigate reports of sexual harassment of employees providing massage services by male clients; and (4) prohibited Rhoten from adopting techniques designed to limit her exposure to sexual harassment by male clients.  (*Id.*)

The Ranch argues that allegations of "sexual harassment form the entire basis of wrongdoing under" Count 9, and, therefore it is barred (just as with Count 3) by the MHRA's exclusivity procedures.  (Doc. 5 at 11.)  Alternatively, The Ranch argues that because Count 9 arises from Rhoten's termination, it must be brought under the WDEA.  (*Id.* at 11–13.)  Finally, The Ranch argues that Count 9 is not barred by MHRA or WDEA exclusivity, then relief may only be pursued through Montana's workers' compensation scheme.  (*Id.* at 13–16.)  Rhoten resists these theories of dismissal on all bases.  (Doc. 8 at 12–16.)  The Court finds this claim suffers from the same defects as Count 3.

As discussed at length in the preceding section, whether Rhoten's ninth claim is barred by the MHRA's exclusivity procedures depends on whether its gravamen complains of conduct proscribed by the MHRA.  *Lay*, 351 P.3d at 675. This, of course, requires an analysis of what the MHRA does and does not proscribe.  Without doubt, the MHRA prohibits sex-based discrimination in the workplace, and sex-based discrimination includes sexual harassment.  *Bachmeier*,

480 P.3d at 243.  Interestingly enough, the MHRA also prohibits an employer from "aid[ing], abet[ing], incit[ing], compel[ing], or coerce[ing] the doing" of sexual harassment in the workplace.  Mont. Code Ann. § 49-2-302.  The Court finds that the gravamen of Rhoten's ninth claim complains of just that.

Specifically, read as a whole, Rhoten's ninth claim alleges that the Ranch failed to provide a safe workplace, in violation of Montana Code Annotated § 50-71-201, because it fostered an environment in which she could be sexually harassed by mail clients.  (Doc. 9 at 30–32.)  Indeed, it is telling that Rhoten's ninth claim adopts language nearly identical to that found in Montana Code Annotated § 49-3-302.  (*Id.* at 31 (stating The Ranch "fostered, aided, coerced, or facilitated" sexual harassment in the workplace).  This is exactly what the MHRA prohibits.  Consequently, the Court will dismiss Rhoten's ninth claim, brought under Montana Code Annotated § 50-71-201, as barred by the exclusivity procedures of the MHRA.[5]  Because of this conclusion, the Court declines to address The Ranch's alternative arguments regarding WDEA or workers' compensation exclusivity.

### III.    Count 10.

Rhoten's tenth claim alleges that The Ranch negligently failed to supervise

---

[5] The Court points out Rhoten appears to bring such a MHRA claim under Count 8.  (Doc. 9 at 27–30.)  As noted in footnote 4, nothing in this Order should be read as commenting on the legal sufficiency of this claim.

its employees.  (Doc. 9 at 33–36.)  The substance of the allegations supporting this count are that The Ranch: (1) failed to investigate Rhoten's reports of sexual harassment; (2) failed to investigate its supervisors failure to investigate reports of sexual harassment; (3) failed to investigate retaliatory conduct by Rhoten's supervisor against her for reporting sexual harassment; and (4) fostered an environment in which sexual harassment of Rhoten could take place.  (*Id.*)  The Ranch seeks dismissal of this claim based on the MHRA exclusivity principles discussed at length above.  (Doc. 5 at 11.)  The Court once again agrees.

As with Count 9, the gravamen of Rhoten's tenth claim for relief is that The Ranch's negligent failure to supervise created an environment in which sexual harassment of Rhoten could flourish, spread, and go unchallenged.  (Doc. 9 at 33–36.)  Again, such behavior, which "aids[s], abet[s], incite[s], compel[s], or coerce[s]" actions resulting in sexual harassment, is specifically barred by the MHRA.  Mont. Code Ann. § 49-2-302.  The Court need say little more.  This sort of claim must be brought under (and in conformance with) the MHRA.  Based on the foregoing, the Court will grant The Ranch's motion to dismiss to the extent it challenges Counts 3, 9, and 10 of Rhoten's first amended complaint.

Accordingly, IT IS ORDERED that Defendant's motion to dismiss Counts 3, 9, and 10, of Rhoten's first amended complaint (Doc. 4, as incorporated into Doc. 12) is GRANTED.

DATED this 22nd day of November, 2021.

Dana L. Christensen, District Judge
United States District Court